IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, SOUTHEAST ALASKA CONSERVATION COUNCIL, SIERRA CLUB, NATIONAL AUDUBON SOCIETY, THE WILDERNESS SOCIETY, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; MARK REY, in his official as Under Secretary of Agriculture; DENNIS E. BSCHOR, in his official capacity as Alaska Regional Forester; and FORREST COLE, in his official capacity as Forest Supervisor for the Tongass National Forest,<br><br>Defendants. | Case No. J03-029-CV(JKS) |

INTERIM SETTLEMENT AGREEMENT

The parties agree to the following interim settlement relating to the advertising, sale and operation of certain timber sales during the pendency of this litigation.

1. The parties agree that the Forest Service may reconfigure the Madder and Buckdance timber sales to develop a new timber sale. The Forest Service may also advertise and sell public works road contracts, provided those contracts are necessary to provide access for a reconfigured sale receiving a responsible, conforming bid. The Forest Service will promptly reconfigure and

INTERIM SETTLEMENT

1

advertise such timber sale and road contracts.

2. The Forest Service agrees that, until the Ninth Circuit issues a decision on the merits of the appeal in this action, or May 15, 2005, whichever occurs first, it will not advertise any timber sales or road construction contracts covered by the following EISs:

    Sea Level (except for the sale and road contracts described in paragraph 1 above),

    Cholmondeley,

    Finger Mountain,

    Canal Hoya,

    Crane and Rowan,

    Madan,

    Three-Mile,

    That portion of the Woodpecker Timber Sale Project that is the subject of the 2004 Record of Decision,

    That portion of the Chasina Timber Sale Project not within the modified Fusion timber sale contract described in the Consent Decree filed July 26, 2004, in this action.

    If the Forest Service decides, consistent with the limits above, to advertise a timber sale or related road construction contract for any of the above listed EISs, it will, during the pendency of this litigation, first provide a 14-day pre-advertisement notice, including notice to the parties, followed by a 30-day advertising period. The plaintiffs may seek injunctive relief as to any such action. Defendants and defendant-intervenors retain the right to oppose any such request for injunctive relief. Plaintiffs agree not to seek shortened time less than 12 days for the defendants to respond to any such initial motion for injunctive relief.

INTERIM SETTLEMENT

3. If Pacific Log & Lumber (PLL) applies for mutual cancellation of the timber sale contract for the Orion North timber sale prior to five months from the effective date of this interim agreement, the Forest Service will agree to such cancellation provided the cancellation agreement includes the following language.

> Pursuant to this agreement, the United States agrees to relieve Pacific Log & Lumber from any damages resulting from the cancellation.
>
> Pacific Log & Lumber releases, waives, and abandons any and all claims against the United States, due to delay, suspension, modification, or cancellation (in whole or in part), including, but not limited to, all claims for costs, expenses, attorney fees, compensatory damages, and exemplary damages. This liability limitation supersedes any other compensation or liability provisions set forth in the timber sale contract, Federal regulation, or the common law.

4. If the Forest Service and PLL mutually cancel the Orion North timber sale now in existence, plaintiffs agree not to seek injunctive relief in this or future litigation as to the modified Madder/Buckdance timber sale and associated road contracts described in paragraph 1 above.

5. This settlement agreement is not intended to and does not modify in any way the injunction pending appeal entered by the Ninth Circuit on October 18, 2004 in this action.

6. This settlement agreement shall become effective when all of the signatures required below have been obtained.

7. This settlement agreement shall not be interpreted to require the expenditure of funds not appropriated by Congress.

8. This settlement agreement is entered into for the sole purpose of settling on an interim basis

INTERIM SETTLEMENT

some of the claims for injunctive relief in this action. This settlement agreement shall not be evidence of any agreement by any party to any allegations raised by any other party in this case, or a waiver by, or an admission against any party.

9. This settlement agreement does not constitute an admission of liability and will not prejudice or otherwise affect the rights of any of the parties with respect to any other litigation or factual situation except as expressly provided herein.

10. This settlement agreement shall be binding on the parties, their officers, agents, successors and assigns and those in privity therewith.

11. This interim settlement shall not be deemed to render plaintiffs prevailing parties in this action or otherwise form the basis for the award of any attorney's fees, costs or expenses in this action.

12. This agreement may be executed in any number of counterparts and by any combination of the signing entities, each of which counterparts shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

Date: 4/7/05

_____
THOMAS S. WALDO
Attorney for plaintiffs

Date: _____

_____
BRUCE M. LANDON
Attorney for federal defendants

INTERIM SETTLEMENT

some of the claims for injunctive relief in this action. This settlement agreement shall not be evidence of any agreement by any party to any allegations raised by any other party in this case, or a waiver by, or an admission against any party.

9. This settlement agreement does not constitute an admission of liability and will not prejudice or otherwise affect the rights of any of the parties with respect to any other litigation or factual situation except as expressly provided herein.

10. This settlement agreement shall be binding on the parties, their officers, agents, successors and assigns and those in privity therewith.

11. This interim settlement shall not be deemed to render plaintiffs prevailing parties in this action or otherwise form the basis for the award of any attorney's fees, costs or expenses in this action.

12. This agreement may be executed in any number of counterparts and by any combination of the signing entities, each of which counterparts shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

Date: _____

THOMAS S. WALDO
Attorney for plaintiffs

Date: _April 7, 2005_

_[signature]_
BRUCE M. LANDON
Attorney for federal defendants

INTERIM SETTLEMENT

4

Date: _____

STEVE SILVER
Attorney for intervenor-defendant
Alaska Forest Ass'n

Date: 4-7-05

*[signature]*

ZACHARY FALCON
Attorney for intervenor-defendant
State of Alaska

INTERIM SETTLEMENT

5

Date: 4/6/05

_____
STEVE SILVER
Attorney for intervenor-defendant
Alaska Forest Ass'n

Date: 4-7-05

_____
ZACHARY FALCON
Attorney for intervenor-defendant
State of Alaska

INTERIM SETTLEMENT

5



*In 1976, the Federal fiscal year changed. This graph does not depict 109.6 mmbf logged from July 1, 1976 to September 30, 1976.

Sources: U.S. Forest Service, 1997, Tongass Land Management Plan, Final Environmental Impact Statement; U.S. Forest Service, Annual Cut and Sold Reports, Region 10.

**Exhibit 29, page 1 of 1**



# The Tongass Timber Program: A Case Study in Bad Business

Of the U.S. Forest Service's timber programs, the Tongass National Forest is one of the most egregiously mismanaged. Costing taxpayers millions each year in subsidies to timber corporations, the Tongass timber program fails to produce jobs, ignores industry trends, and suffers consistently massive institutional losses.

## Losses
- In fiscal year (FY) 2004, the Forest Service spent more than $48 million on the Tongass timber program, but took in less than $800,000 from timber companies.[1] That equates to more than $47 million in losses.
- Since 1982, cumulative Tongass losses have reached $850 million.[2]
- Between 1998-2004, almost 50 percent of offered Tongass timber contracts went unsold.[3]
- Between 1998-2004, 70 percent of Tongass timber sales receiving bids had only one bidder.[4]
- According to Forest Service estimates, 90-95 percent of all existing Tongass timber sale contracts were determined unprofitable due to persistently poor conditions in global timber markets.[5]

## Maintenance Backlog
- As of 2002, the Tongass faces a $100 million road maintenance backlog.[6]
- Of the 5,000 miles of Tongass forest roads, only 1,200 miles, or 24 percent, are open to passenger cars.[7] According to the Forest Service, these roads are "sufficient to satisfy local demand for roaded recreation, subsistence, and community connectivity needs and demands in most districts."[8]
- Built with taxpayer money, the remaining 77 percent of roads are for timber access and extraction only.[9] Taxpayers are building roads they cannot use in order to shield timber companies from the true cost of doing business. New Tongass roads will only saddle taxpayers with additional construction and maintenance costs the Forest Service has already proven itself incapable of meeting.

## Mismanagement
- The Forest Service persistently overestimates demand for Tongass timber. In FY 2004, timber companies logged only 45.7 million board feet.[10] Yet the Forest Service continues to set demand for new timber at 150 million board feet per year. This is more than three times the past 3-year average annual level of 44 million board feet.[11]
- Other demand estimates are even more unrealistic. Alaska's governor, former Senator Frank Murkowski, cited future annual Tongass demand to be 360 million board feet.[12] Such radical overestimation of demand will mean just one thing: further losses.

## Jobs
- Job numbers have been inversely proportional to Forest Service spending. Between 1996 and 2004, Tongass timber-related jobs fell from 1,558 to just 293.[13] Consequently, taxpayer subsidies per Tongass timber job rose from $12,000 in 1996 to $163,000 in 2004.[14] This is four times the

A non-partisan budget watchdog
651 Pennsylvania Avenue, SE • Washington, DC 20003 • Tel: (202) 546-8500 • Fax: (202) 546-8511 • staff@taxpayer.net • www.taxpayer.net

Exhibit 30, page 1 of 2

median U.S. household income.[15] At a timber industry salary average of $46,000 a year,[16] it would be cheaper for taxpayers to pay loggers NOT to do their jobs.

## The Bottom Line

Taxpayers cannot afford to keep subsidizing Tongass logging. The numbers speak for themselves. The Forest Service has experienced long-term losses, lacked accountability, and ignored a massive maintenance backlog. The Forest Service must address its mounting fiscal and management problems before initiating new expenditures. With the nation facing record deficits, it is time that Congress gets serious about fiscal responsibility. Taxpayers should not be forced to spend precious dollars on Tongass subsidies.

For more information please contact Franz A. Matzner, Tongass Campaign Coordinator, at 202-546-8500 x127 or franz@taxpayer.net.

---

[1] USDA, *Forest Service FY 2006 Budget Justification*, Pg. 14-5; R10 Cut and Sold reports available at http://www.fs.fed.us/r10/ro/policy-reports/for_mgmt/cut_and_sold/cut_and_sold_fy2004_mbf.pdf
[2] Based on material provided by the Forest Service via FOIA and analysis conducted by Joseph R. Mehrkens, former Forest Service Regional Economist, Juneau, Alaska. Material on file with Taxpayers for Common Sense.
[3] Ibid.
[4] Ibid.
[5] Memorandum from Steve Brink, Deputy Regional Forester for Natural Resources, to Chief of the U.S. Forest Service, March 28, 2002. (Document on file with Taxpayers for Common Sense.)
[6] Taxpayers for Common Sense. *Road Wrecked: Why the $10 Billion Forest Service Backlog is Bad for American Taxpayers.* March 31, 2004. Pg.6.
[7] United States Department of Agriculture, Forest Service, Tongass National Forest. *Tongass National Forest Forest-Level Roads Analysis.* Jan. 2003.Pg.1
[8] Ibid.Pg.2
[9] Taxpayers for Common Sense. *Road Wrecked: Why the $10 Billion Forest Service Backlog is Bad for American Taxpayers.* March 31, 2004. Pg.8.
[10] USDA, Alaska Region, R10 Cut and Sold reports available at http://www.fs.fed.us/r10/ro/policy-reports/for_mgmt/cut_and_sold/cut_and_sold_fy2004_mbf.pdf.
[11] USDA, Alaska Region, R10 Cut and Sold Reports available at *http://www.fs.fed.us/r10/ro/policy-reports/*
[12] Alaska Governor Frank Murkowski. The State of the State Address, Jan. 23, 2003.
[13] Robertson, Guy, Regional Economist. *Employment in the Wood Products Industry in Southeast Alaska 1982-2002;* Material supplied by Forest Service via e-mail correspondence. Material on file with Taxpayers for Common Sense.
[14] Based on a Taxpayers for Common Sense calculation using the employment data above and Robertson, Guy, Regional Economist. *R10 Budget Expenditures by Fund Code,* U.S. Forest Service data for Alaska Region obtained by Southeast Alaska Conservation Council through Freedom of Information Act, Dec. 2002.
[15] Data available at White House Economic Statistics Briefing Room. *Downloaded from http://www.whitehouse.gov/fsbr/income.html.* March 2005.
[16] Data available at State of Alaska Dept. of Labor. *Downloaded from http://www.labor.state.ak.us/research/wage/swoes.htm#farm.* April 2004.

| United States Department of Agriculture | Forest Service | Tongass Petersburg | Ranger District | 12 North Nordic Drive Po Box 1328 Petersburg, Alaska 99833-1328 |
|---|---|---|---|---|

Reply to: 2430

Date: 09/29/2005

Dear Prospective Bidder:

On 11/08/2005, at 02:00 PM, sealed bids will be opened in the the Petersburg Forest Supervisor's Office for the Lindenberg sale. This sale is located in T.58S., R.78E., secs. 29-35. T.59S., R.78E., secs. 4, 5, 11, 14, 16, and 36. T.59S., R.79E., secs. 31-33. T.60S., R.79E., secs. 4, 5, 8, 17, and 18. CRM. Timber sale Contract 2400-6T will be used. The termination date for this sale is 11/30/2009.

There are 0.9 kilometers of specified road reconstruction, 2.1 kilometers of specified road construction, and 1 specified road bridge. A specified road construction cost of $246,560.00 has been allowed in the appraisal for this work.

The estimated quantities in this contract have been determined prior to felling. The total estimated quantity on this sale is 23,239.47 MBF. The Forest Service encourages potential bidders to make their own inspection and estimate prior to bid submission. The Forest Service makes no representation, warranty, or guarantee of the accuracy of the following quantity estimates:

### Estimated Quantities and Minimum Acceptable Rates per Unit of Measure / Required Deposits

| Species | Product | Unit of Measure | Estimated Quantities | Average DBH | Minimum Acceptable Bid Rates | Base Rates | Slash Disposal | Road Maintenance |
|---|---|---|---|---|---|---|---|---|
| Western Hemlock | Sawtimber | MBF | 11,611.16 | 18.10 | $2.00 | $2.00 | $0.00 | $0.00 |
| Sitka Spruce | Sawtimber | MBF | 6,740.90 | 28.40 | $23.26 | $12.00 | $0.00 | $0.00 |
| Alaska Cedar | Sawtimber | MBF | 1,240.78 | 18.00 | $35.45 | $20.00 | $0.00 | $0.00 |
| Only the Fixed Rate Applies | | | | | | | | |
| Western Hemlock Utility | Pulpwood | MBF | 2,902.80 | N/A | $2.00 | $2.00 | $0.00 | $0.00 |
| Sitka Spruce Utility | Pulpwood | MBF | 743.83 | N/A | $2.00 | $2.00 | $0.00 | $0.00 |
| | Total | MBF | 23,239.47 | | | | $0.00 | $0.00 |

The minimum acceptable bid for advertised timber is $224,001.31 for the biddable species.

Exhibit 31, page 1 of 2

There is a $23,200.00 bid guarantee required on this sale.

If you wish further information on this sale, the prospectus and bid form, please write or call the the Petersburg Ranger District Office or Petersburg Supervisor's Office.

Sincerely,

Charley Streuli

Charles D. Streuli
Timber, Fire and Ecology Staff Officer

Enclosure

Mark Rorick
1055 Mendenhall Pen.
Juneau AK 99801

USDA Forest Service
Petersburg Ranger District
P.O. Box 1328
Petersburg, Alaska 99833-1328

Exhibit 31, page 2 of 2

SENT BY: JUNEAU GROUP SIERRA CLUB;   907 789 5472;   MAR-3-06  9:58AM;   PAGE 1/3

| United States Department of Agriculture | Forest Service | Tongass Wrangell | Ranger District | | 525 Bennett Street Po Box 51 Wrangell, Alaska 99929-0051 |
|---|---|---|---|---|---|

Reply to:  2430

Date:  09/29/2005

Dear Prospective Bidder:

On 11/01/2005, at 02:00 PM, sealed bids will be opened in the Petersburg Supervisor's Office for the SKIPPING COW sale. This sale is located in Township 63 South, Range 81 East, Section 32; Township 64 South, Range 80 East, Sections 12,13,14,24,and 25; and Township 64 South, Range 81 East, Sections 5, 6, 7, 8, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 26, 27, 28, 29, 30, 32, and 33; Copper River Meridian.. Timber sale Contract 2400-6 will be used. The termination date for this sale is 10/31/2011. This is a small business set-aside sale.

This sale will be preferentially awarded to a qualified small business concern. In the absence of any bids from a self-certifying qualified small business concern, the sale will be readvertised without restriction on the size of bidders.

There are 4.1 kilometers of specified road construction.   A specified road construction cost of $310,152.70 has been allowed in the appraisal for this work.

Measurement of the estimated quantities will be made after felling. The total estimated quantity on this sale is 18,640.91 MBF. The Forest Service encourages potential bidders to make their own inspection and estimate prior to bid submission. The Forest Service makes no representation, warranty, or guarantee of the accuracy of the following quantity estimates:

### Estimated Quantities and Minimum Acceptable Rates per Unit of Measure

| Species | Product | Unit of Measure | Estimated Quantities | Average DBH | Minimum Acceptable Bid Rates | Base Rates | Required Deposits | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Slash Disposal | Road Maintenance |
| Western Hemlock | Sawtimber | MBF | 8,806.91 | 16.10 | $2.00 | $2.00 | $0.00 | $2.94 |
| Western Red Cedar | Sawtimber | MBF | 710.59 | 22.40 | $12.00 | $12.00 | $0.00 | $2.94 |
| Sitka Spruce | Sawtimber | MBF | 3,020.18 | 18.60 | $12.25 | $12.00 | $0.00 | $2.94 |
| Alaska Cedar | Sawtimber | MBF | 3,569.26 | 17.00 | $21.01 | $20.00 | $0.00 | $2.94 |
| Only the Fixed Rate Applies | | | | | | | | |
| Western Hemlock Utility | Pulpwood | MBF | 2,201.74 | N/A | $2.00 | $2.00 | $0.00 | $2.94 |
| Sitka Spruce Utility | Pulpwood | MBF | 332.23 | N/A | $2.00 | $2.00 | $0.00 | $2.94 |
| | Total | MBF | 18,640.91 | | | | $0.00 | $54,804.28 |

The minimum acceptable bid for advertised timber is $138,128.26 for the biddable species.



Exhibit 32, page 1 of 3

SENT BY: JUNEAU GROUP SIERRA CLUB;    907 789 5472;    MAR-3-06  9:57AM;    PAGE 1/2

There is a $14,400.00 bid guarantee required on this sale.

If you wish further information on this sale, the prospectus and bid form, please write or call the the Petersburg Supervisor's Office, Ketchikan Supervisor's Office, and Wrangell Ranger District Office.

Sincerely,

*Austin O'Brien*

Austin O'Brien
TMA

Enclosure

Contract Special Provision C2.12# - OPTIONAL REMIVAL is included in the contract. This provision allows the Purchaser the option of leaving in the harvest unit the Fixed Rate Products (Utility Logs). The Purchaser will make a lump sum payment for the Fixed Rate Products whether or not the material is removed. No Required Deposits will be applied to the Fixed Rate Products.

The Estimated Quantities and Minimum Acceptable Rates per Unit of Measure table indicates that a Road Maintenance Deposit will be applied to all Species/Products. However, no deposits will be applied to Fixed Rate Products that are Optional Removal. This error will be fixed in future advertisements. Provision C2.12# prevails for this advertisement and the road maintenance deposits pertain only to sawlog species and products.

Exhibit 32, page 3 of 3