Thomas S. Waldo
Eric P. Jorgensen
Michael C. LeVine
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Ph: 907-586-2751
Fax: 907-463-5891
Email: twaldo@earthjustice.org

Nathaniel S.W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
Ph: 360-534-9900
Fax: 360-534-9909
Email: nlawrence@nrdc.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ORGANIZED VILLAGE OF KAKE, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| UNITED STATES FOREST SERVICE, *et al.*, | ) |
| Defendants, and | ) |
| ALASKA FOREST ASSOCIATION, | ) Case No. J04-0029 CV (JKS) |
| Intervenor-Defendant. | ) |

**DECLARATION OF NICHOLAS C. DAVIS**

I, Nicholas C. Davis, declare as follows:

1.  I was born in Petersburg in 1947 and have lived in Kake all my life. I am on the Council of the Organized Village of Kake.

**Exhibit 46, page 1 of 10**

## The Organized Village of Kake

2.  The Organized Village of Kake (OVK) is a federally recognized Indian Tribe organized
    under the authority of the Indian Reorganization Acts of 1934 and 1936.  OVK's address
    540 Keku, Kake.

3.  The Organized Village of Kake has 516 tribal members, most who reside in Kake.  The
    Mission of the Organized Village of Kake is to promote the welfare of tribal members
    and descendents through the development and operation of social, economic and cultural
    enterprises, and to preserve and maintain Native cultural traditions and our subsistence
    lifestyle.

4.  Our office in Kake offers a broad array of services to Kake's tribal members, including
    management of tribal funds and lands, and planning for economic development. Our staff
    provides social services to families under the Indian Child Welfare Act, operates the
    Johnson-O'Malley program in Kake and assists tribal members with their housing needs.
    OVK's office includes administering our own trust & realty program as well as an
    environmental program. Our educational services office administers vocational, higher
    education and other education grants and conducts programs, classes and special events
    to pass along and preserve our Village's history and cultural traditions.  Protection of
    customary and traditional hunting and fishing uses is critical to the preservation of our
    culture and one of OVK's highest priorities.

Exhibit 46, page 2 of 10

**Kuiu Island in Kake's History**

5. Kake tribal members have strong historical ties to Kuiu Island. All of Kuiu Island is within the traditional area that our people have used for fishing, hunting and gathering. Many of Kake's families descend from communities once located on Kuiu Island. Up until the turn of the century these villages were vibrant outposts of traditional culture where villagers lived off the abundant resources of the island, fishing salmon, halibut and shellfish, trapping furbearers, and hunting deer, bear and seal. Modern day Kake was a winter gathering place and potlatch site for the many clans who were dispersed throughout the area. In 1912, Quakers established a missionary school at Kake and, because they would be fined for keeping their children out of school, Kuiu's villagers began spending much of their year in Kake. Still, as recently as the 1950's, many returned to Kuiu Island in the summer to hunt, fish and gather for their year round needs.

6. Kake villagers regularly hunted on Kuiu Island until deer hunting was closed due to depressed populations in 1973. To this day, many of Kake's hunters recall successful fall and winter hunting trips to Kuiu with their fathers, hiking through the corridors of huge spruce that lined the creek drainages and protected both deer and hunter from winter snowfall. Many stayed in the old camps and were shown by their fathers remnants of their ancestors' villages and forts.

7. Many historical sites around logging operations have been damaged. For example, in the 1960's while there was logging activity going on near Halleck Harbor in Saginaw Bay, a canoe, and artifacts and regalia laid to rest in cliffs at "Fossil Bluffs" were removed. Ancient drawings in those same cliffs have been used for target practice.

Exhibit 46, page 3 of 10

8.  Similarly, in the Rowan Mountain timber sale, the Forest Service approved clearcutting a great concentration of 249 culturally modified cedar trees on 30 acres near Boil Fish Cove. These trees connect us to our past, and clearcutting them would be a great cultural loss.

9.  Much of the history of Kake villagers is being lost with the loss of customary and traditional hunting and fishing areas on Kuiu Island to logging. For a whole generation, logging activity and hunting closures have deterred or precluded many Kake elders from accompanying their children and grandchildren to the old traditional hunting and fishing areas and passing along the history of their ancestors who once lived there.

## Harms to Traditional and Customary Use

10. Over the nearly twenty years that Kake hunters were not allowed to hunt on Kuiu Island, massive clearcutting continued under the Forest Service's long-term timber contract with Alaska Pulp Corporation. During this time, Kake hunters were forced to make dangerous crossings to hunt on Admiralty and other islands. By the time the island was reopened for hunting in 1992, logging roads, bordered by clearcuts on either side, ran up most of the major drainages on the northeast part of the island. Landslides in clearcut areas had damaged many of the productive salmon streams.

11. Because of Kuiu's close proximity, Kake's hunters have slowly returned to the area. Many, deterred by the extensive logging that has taken place on North Kuiu over the past thirty years, and now accustomed to hunting on Admiralty and Baranof Islands, have not returned to Kuiu. The long crossing to Admiralty and Baranof Islands for hunting are

Exhibit 46, page 4 of 10

dangerous and contributed to a decrease in hunting by Kake's traditional users during the years of the deer closures in areas closer to Kake.

12. We had to confront our worst fears when we lost three members who drowned in late December 2003 returning in a skiff from a hunting trip to Admiralty Island.

13. The survival of Kake's traditional hunting and fishing culture is dependent on the recovery of deer populations closer to Kake. Continued logging operations will increase hunters' reluctance to return to Kuiu. If more habitat is lost to logging, the deer will have trouble rebounding from hard winters and increased pressure from other hunters using the logging roads. This could result in further deer closures that would deprive Kake's traditional users of accessible food sources and do irreparable harm to the traditional hunting and fishing culture the Organized Village of Kake is working so hard to preserve.

14. Customary and traditional hunting and fishing are important not only to our culture, but also to our economy. According to a 1987 subsistence survey by the Alaska Department of Fish and Game, Kake tribal membership gathered over 50% of our food, representing a value of over $4.5 million per year.

### Personal Use of Kuiu Island

15. My ancestors come from Saginaw Bay on Kuiu Island. My great-grandparents moved to Kake, along with other villagers from different places on Kuiu, shortly after the turn of the century when their children were required by missionary settlers to attend school in Kake. For many years after that they returned with their families to the old villages on Kuiu Island to spend part of the year hunting, fishing and gathering the food and materials needed for their sustenance.

**Exhibit 46, page 5 of 10**

16. When I was very young boy, my dad often showed me the old camps on Kuiu Island where our family hunted, fished and gathered. Although our family no longer camped at our traditional site, our elders shared with their children all the traditional methods of harvesting and preparing fish, game and plants from the island. Later I accompanied my mother during the summers when she went to work at the cannery in Saginaw Bay and Pillar Bay. As a teenager, I took my skiff to hunt deer along Kuiu's north and east shoreline, from Kadake Bay all the way down to Three Mile Arm and No Name Bay. I continued to hunt and gather all around Kuiu until the long hunting closure that began in the early 1970's and ended in the 1990's. I would like the deer populations on Kuiu to recover so that I can pass along to my children the hunting and gathering traditions I learned from my parents.

17. I am a commercial fisherman and own a seiner, the <u>Harvester</u>. I fish from below Port Camden all the way around north Kuiu and down to Tebenkof. I am very concerned about the damage that has been done to salmon streams on Kuiu Island from all the logging that has gone on there. More clearcutting threatens to harm the fishery that I, and many other Kake villages, depend upon.

### Past Efforts to Protect Kuiu Island

18. In 1944 in a petition to the Secretary of the Interior, the Town of Kake listed the east side of Kuiu Island, including Threemile Arm, as part of the land that the Tlingit Indians of Kake have used and occupied from time immemorial and continue to use today.

19. To improve government-to-government consultation with Alaska Native Councils, the President of the United States directed federal agencies, including the Forest Service, in

**Exhibit 46, page 6 of 10**

1998 to consult with all Indian tribal governments, *"in matters that significantly or uniquely affect their communities."* Executive Order 13175 further directed federal agencies to relate to federally-recognized Indian tribes on formal government-to-government basis. Despite this, Forest Service has rarely modified its decisions substantially in relation to Tongass-wide or timber sale specific planning in response to tribal government concerns. Unfortunately, the April 23, 2004 Record of Decision approving the Threemile timber sale is the most recent in a long history of decisions that fails to respond meaningfully to the concerns of the Organized Village of Kake with the agency's timber and road-building program on lands within our traditional territory.

20. On May 25, 1993, the Organized Village of Kake unanimously passed Tribal Council Resolution No. 93-14, which strongly opposed the logging and road building on Kuiu Island approved in the January 29, 1993 Record of Decision for the North and East Kuiu Timber Sale. This resolution noted the most recent available data showing the high economic value of customary and traditional harvest activities by tribal members on Kuiu and Kupreanof Islands. The resolution further noted the high economic and human costs associated with traveling across Frederick Sound to Admiralty Island.

21. After the Alaska Pulp Corporation announced it was suspending pulp mill operations indefinitely on October 1, 1993, the Organized Village of Kake unanimously passed Tribal Council Resolution 93-20. This resolution requested the Forest Service to put on hold all logging activities on Kuiu Island until completion of the Tongass Plan revision and the agency took an honest look at the opportunities for a new approach to sustainable community economies and multiple use management. Such an approach would be based on recognition of the important traditional and cultural uses of forest resources upon

**Exhibit 46, page 7 of 10**

which Kake residents depend.  Unfortunately, when the Forest Service refused to

reconsider its logging and road building plans on Kuiu Island, the Organized Village of

Kake was forced to file a lawsuit to protect the interests of our members.

22. On September 20,1995, the Organized Village of Kake unanimously passed Tribal

Council Resolution 95-21.  This resolution declared the tribe's opposition to any and all

logging that results in the significant restriction of customary and traditional hunting,

fishing, and gathering.  This resolution further requested the Forest Service to conduct

island-specific planning before offering more timber for sale in the tribe's customary and

traditional use areas.

23. In August 1996, in comments regarding the Tongass Land Management Plan, the

Organized Village of Kake asked the Forest Service to look closely at the environmental

justice issues in the Tongass National Forest.  In the past decade the Forest Service has

attempted or offered close to a dozen timber sales in our customary and traditional use

areas, including the North and East Kuiu, Crane and Rowan Mountain, North Irish Re-

offer, Shamrock, Port Houghton and Cape Fanshaw.  In addition to the Threemile timber

sale, the agency is also planning the Kuiu timber sale.  As a society that relies on

subsistence, our health and well-being is more closely linked to the land than it is for

those who live in an urban setting like Juneau, yet the Forest Service has focused their

logging in the lands most important for subsistence use by Native communities.

24. On February 18, 1997, the Organized Village of Kake unanimously passed Tribal

Council Resolution No. 97-06.  This resolution again called for no timber sales within the

customary and traditional use areas of the Organized Village of Kake, including Kuiu and

Kupreanof Islands, and the mainland near Kake.

8

**Exhibit 46, page 8 of 10**

25. In response to the failure of the decision revising the Tongass Land Management Plan to fully protect and respect customary and traditional uses or minimize adverse impacts to those uses, the Organized Village of Kake unanimously passed Tribal Council Resolution No. 97-22, authorizing the tribe's joinder with other federally recognized tribes in an administrative appeal of this decision.

26. On September 14, 1998, the Organized Village of Kake filed an administrative appeal of the Crane and Rowan Mountain timber sales.  We objected to the damage to customary and traditional subsistence uses and to culturally modified trees.

27. On June 22, 2002, the Organized Village of Kake unanimously passed Tribal Council Resolution No. 202-10.  This resolution repeated our strong opposition to the 1997 Tongass Land Management Plan and its failure to provide lasting protection for Kake's important customary and traditional use areas.  The resolution called for long-term protection for inventoried roadless areas within the tribe's customary and traditional use area.

28. The Record of Decision for the Threemile timber sale is the latest example of the Forest Service putting the interests of the larger and wealthier communities ahead of a sustainable future for our small community.  The Organized Village of Kake filed an administrative appeal of this decision in August 2004.

**Exhibit 46, page 9 of 10**

29. The above resolutions and actions illustrate the tribe's longstanding, and as yet unsuccessful, efforts to convince the Forest Service to manage our customary and traditional lands in ways that best safeguards those resources and uses.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 8/10/05

Nicholas C. Davis

**Exhibit 46, page 10 of 10**

Thomas S. Waldo
Eric P. Jorgensen
Michael C. LeVine
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Ph: 907-586-2751
Fax: 907-463-5891
Email: twaldo@earthjustice.org

Nathaniel S.W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
Ph: 360-534-9900
Fax: 360-534-9909
Email: nlawrence@nrdc.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ORGANIZED VILLAGE OF KAKE, SOUTHEAST ALASKA CONSERVATION COUNCIL, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, THE WILDERNESS SOCIETY, and CENTER FOR BIOLOGICAL DIVERSITY, <br><br>     Plaintiffs, <br><br>     v. <br><br> UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; MARK REY, in his official capacity as Under Secretary of Agriculture; DENNIS E. BSCHOR, in his official capacity as Alaska Regional Forester; and FORREST COLE, in his official capacity as Forest Supervisor for the Tongass National Forest, <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. J04-0029 CV (JKS) |

**DECLARATION OF ROBERT E. LINDEKUGEL**

I, Robert E. Lindekugel, declare as follows:

**Exhibit 47, page 1 of 3**

1.  I am the Conservation Director for the Southeast Alaska Conservation Council
(SEACC).  I have been employed by SEACC since 1990.  I am closely familiar with
SEACC's organizational purposes and goals.

2.  SEACC is a non-profit organization of 18 volunteer citizen conservation groups in
fourteen Southeast Alaskan communities.  SEACC has over 2,200 members, including
Alaskans from all walks of life including commercial fishermen, Alaska Natives, tourism
and recreation business owners, small timber operators and high value-added
manufacturers, hunters, and guides.  SEACC's purpose is to insure that a substantial
portion of this region is retained and protected in a minimally changed condition, while
encouraging human enjoyment and use of the fish, wildlife, recreation, subsistence,
scenic, wilderness, and other natural resources and values of southeast Alaska.  In order
to achieve this purpose, SEACC advocates, on behalf of its members, for the
conservation, protection, and wise long-term use of these resources.

3.  SEACC also advocates for a sustainable regional economy consistent with retaining
and protecting our region's natural resources.  Conservative and sustainable use of our
natural resources is inseparable from the stewardship and protection necessary to provide
for balanced multiple use of all forest resources.  SEACC believes that environmental
protection is a key component of sustainable use of our forests and other resources.

4.  In keeping with its organizational purpose, SEACC has been and continues to be
deeply involved in reviewing, publicizing, commenting on, and where necessary
appealing timber sale projects proposed by the U.S. Forest Service for the Tongass
National Forest, in Southeast Alaska.  We commented on, educated the public and our
members about, and appealed the 1997 Tongass Land Management Plan Revision
(TLMP).  Since then, we have also investigated, commented on, educated others about
and appealed a number of timber sales implementing TLMP, including the Threemile
timber sale project.

**Exhibit 47, page 2 of 3**

5.   Members of SEACC use areas in the Tongass, including the Threemile timber sale project, for hunting, fishing, subsistence, guiding, tourism, other businesses, and recreation.  Our members' use and enjoyment of these areas will be harmed by the excessive amount of timber offered for sale under the 1997 TLMP and in the Threemile timber sale project implementing TLMP.


I declare under penalty of perjury that the foregoing is true and correct.

Dated this *9* day of August, 2005


Robert E. Lindekugel
Southeast Alaska Conservation Council

3                              **Exhibit 47, page 3 of 3**

Thomas S. Waldo
Eric P. Jorgensen
Michael C. LeVine
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Ph: 907-586-2751
Fax: 907-463-5891
Email: twaldo@earthjustice.org

Nathaniel S.W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
Ph: 360-534-9900
Fax: 360-534-9909
Email: nlawrence@nrdc.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ORGANIZED VILLAGE OF KAKE, SOUTHEAST ALASKA CONSERVATION COUNCIL, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, THE WILDERNESS SOCIETY, and CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; MARK REY, in his official capacity as Under Secretary of Agriculture; DENNIS E. BSCHOR, in his official capacity as Alaska Regional Forester; and FORREST COLE, in his official capacity as Forest Supervisor for the Tongass National Forest, | ) ) ) Case No. J04-0029 CV (JKS) ) ) ) ) ) |
| Defendants. | ) ) |

**DECLARATION OF JOHANNA H. WALD**

I, Johanna H. Wald, declare that:

1.  I am the Director of the Land Program of the Natural Resources Defense Council (NRDC). I have been on the staff of NRDC since 1973, and I am familiar with NRDC's operations nationally and in Alaska.

2.  NRDC is a non-profit environmental organization, with over 550,000 members nationwide, including more than 1,300 in Alaska. NRDC uses law, science, and the support of its members and others in the public to protect the planet's wildlife and wild places, and to ensure a safe and healthy environment for all living things.

3.  NRDC and its members have, for many years, worked to protect wildlands and natural values on national forests. We have participated in rule-makings, planning processes, and/or litigation for the Tongass National Forest, as well as other national forests in Alaska, Arizona, California, Colorado, Idaho, Montana, Nevada, Oregon, Puerto Rico, Virginia, Washington, West Virginia, and Wisconsin. Specifically, we have participated in revision of the Tongass Land Management Plan, inclusion of and subsequent exemption of the Tongass from the Roadless Area Conservation Rule, and decisionmaking about the Threemile Timber Harvest Project. We have used information gained from Forest Service environmental impact statements in all of those processes, to inform the public about them and to encourage public participation in them.

4.  NRDC and its members regularly use and enjoy national wilderness areas in the Tongass National Forest. We have members who reside in southeast Alaska, who live in close proximity to and often visit the Tongass. Others, including NRDC's President and Executive Director, members of the Board of Directors, and I, to name a few, have visited the Tongass for substantial periods of time and plan to do so again.

5.  NRDC members use and enjoy the unroaded areas that are the focus of this litigation. NRDC members value roadless areas for their relatively undisturbed character, scenic beauty, and opportunities to experience and observe wildlife species and other natural elements of

**Exhibit 48, page 2 of 3**

2

wildland settings. NRDC and its members will suffer adverse effects should the Threemile Project be allowed to continue.

      I swear under penalty of perjury that the foregoing is true and correct.

Dated: _9 August 2005_          _Johanna H. Wald_ (signature)

                                                Johanna H. Wald

**Exhibit 48, page 3 of 3**

Thomas S. Waldo
Eric P. Jorgensen
Michael C. LeVine
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Ph: 907-586-2751
Fax: 907-463-5891
Email: twaldo@earthjustice.org

Nathaniel S.W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
Ph: 360-534-9900
Fax: 360-534-9909
Email: nlawrence@nrdc.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ORGANIZED VILLAGE OF KAKE, SOUTHEAST ALASKA CONSERVATION COUNCIL, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, THE WILDERNESS SOCIETY, and CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; MARK REY, in his official capacity as Under Secretary of Agriculture; DENNIS E. BSCHOR, in his official capacity as Alaska Regional Forester; and FORREST COLE, in his official capacity as Forest Supervisor for the Tongass National Forest, | ) ) ) ) ) ) ) ) ) | Case No. J04-0029 CV (JKS) |
| Defendants. | ) ) | |

**DECLARATION OF MARK RORICK**

I, Mark Rorick, declare as follows:

1. I am the Chair of the Juneau Group of the Sierra Club, and a member of both the Executive Committee and the Conservation Committee of the Alaska Chapter of the Sierra Club. I am quite familiar with the Sierra Club's purpose and mission and its activities in Southeast Alaska.

2. The Sierra Club is a national non-profit organization dedicated to the exploration, enjoyment, and preservation of the scenic and natural resources of the United States. Our involvement with the public lands of Alaska spans the twentieth century. The Sierra Club works towards educating and enlisting the public to protect and restore the quality of the natural environment. The Sierra Club's interests encompass a wide range of environmental issues, including wildlife conservation, wilderness, public lands and waters, endangered species, clean water, and clean air. The Sierra Club has approximately 750,000 members, 1,850 of whom live in Alaska. There are three volunteer led Sierra Club groups in Alaska, whose members work to preserve and protect Alaska's resources. One of these groups is the Juneau Group which I chair.

3. We have members throughout Southeast Alaska who enjoy and value the region for its scenery, wilderness, wildlife, and solitude. Other Sierra Club members come to visit the region from other states where such a combination of qualities no longer exists on anything like the scale that occurs here. Our members particularly value pristine, uncut and unroaded portions of the Tongass National Forest, and seek out these areas to hike, kayak, photograph, paint, and relax.

4. Increasingly, our members have found it difficult to find undisturbed natural settings and solitude in Southeast Alaska, as more and more areas are encroached upon by logging activity, and as interest in visiting pristine areas increases. Many portions of our publicly owned

**Exhibit 49, page 2 of 3**

Tongass National Forest are now marred by a patchwork of clearcuts and approximately 4,500 miles of logging roads, built for the logging industry and paid for by the American taxpayer. The loss of pristine forests and wetlands is deeply disturbing to our members.

5.    Roadless areas are important to our members and to fulfillment of our organizational purpose because they:  help produce clean water by protecting watersheds; improve air quality by acting as a filter for pollutants; provide critical habitat for threatened or endangered species; maintain biological diversity; offer outdoor wilderness recreation opportunities; offer scenic beauty; and serve as a spiritual or psychological haven from modern day pressures.

6.    Knowing that a large percentage of the nation's forested areas have already been cleared, the Sierra Club believes the Forest Service has done the public and our members a disservice by offering the quantities of timber it offers for sale and the important natural areas, especially those that are roadless, it is proposing to develop.

7.    In order to try to protect Tongass roadless areas, the Sierra Club has commented on, disseminated information about, encouraged others to participate in, and appealed numerous Forest Service activities and decisions affecting wildlands in Southeast Alaska.  These include the 1997 Tongass Land Management Plan, timber sales that implement that plan (including the Threemile Project), and processes relating to the Forest Service's Roadless Area Conservation Rule.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 9 , 2005

_____
Mark Rorick

**Exhibit 49, page 3 of 3**

Thomas S. Waldo
Eric P. Jorgensen
Michael C. LeVine
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Ph: 907-586-2751
Fax: 907-463-5891
Email: twaldo@earthjustice.org

Nathaniel S.W. Lawrence
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
Ph: 360-534-9900
Fax: 360-534-9909
Email: nlawrence@nrdc.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ORGANIZED VILLAGE OF KAKE, SOUTHEAST ALASKA CONSERVATION COUNCIL, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, THE WILDERNESS SOCIETY, and CENTER FOR BIOLOGICAL DIVERSITY, <br><br>     Plaintiffs, <br><br> v. <br><br> UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; MARK REY, in his official capacity as Under Secretary of Agriculture; DENNIS E. BSCHOR, in his official capacity as Alaska Regional Forester; and FORREST COLE, in his official capacity as Forest Supervisor for the Tongass National Forest, <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. J04-0029 CV (JKS) |

---

**DECLARATION OF ELEANOR HUFFINES**

Exhibit 50, page 1 of 3

I, Eleanor Huffines, declare as follows:

1. I am The Wilderness Society's Alaska Regional Director. In this capacity I am familiar with the operations of The Wilderness Society in Alaska and nationally.

2. Founded in 1935, the Wilderness Society works to protect America's wilderness and to develop a nationwide network of wild lands through public education, scientific analysis and advocacy. Our goal is to ensure that future generations will enjoy the clean air and water, wildlife, beauty, and opportunities for recreation and renewal that pristine forests, rivers, deserts, and mountains provide. We are a non-profit membership organization with approximately 200,000 members nationwide, with about 750 in Alaska. The Wilderness Society is headquartered in Washington D.C., and has eight regional offices across the country.

3. Of particular importance to The Wilderness Society in Alaska is the protection of the wild natural ecosystems in the Tongass National Forest. The Society and its members advocate both in Congress and in the Executive branch for policies and decisions that will better protect those ecosystems and their wilderness-dependent wildlife. These areas are important to our members because of their value for wildlife and their aesthetic qualities. Our members rely on these areas for recreational and aesthetic purposes.

4. The Wilderness Society and its members have long been involved in the Tongass public planning, policy development, and decision making processes. Among other processes we participated in are revision of the 1997 Tongass Land Management Plan, the Threemile Project, and both adoption and revocation of the Roadless Area Conservation Rule. We use information gathered from the U.S. Forest Service in these and other processes to inform the public about Tongass conservation, and to encourage the public to become involved in government policies and decision making affecting the Tongass.

**Exhibit 50, page 2 of 3**

5. Members of The Wilderness Society use areas all around the Tongass, including those threatened by the Threemile timber sale, for solitude, nature study, and places to get away. We believe the Forest Service failed in its duty to adequately protect these important qualities of the Tongass in its 1997 Tongass Land Management Plan Revision and in the Threemile timber sale. The Forest Service has authorized excessive logging and roadbuilding in ecologically important areas of the Tongass, and the country and its citizens have been cheated.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8-10-05

Eleanor Huffines, Regional Director
The Wilderness Society

3

**Exhibit 50, page 3 of 3**