FILED

APR 29 1996

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

RECEIVED

MAY 0 1 1996

Office of
United States Attorney
Anchorage, AK

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

ALASKA WILDERNESS RECREATION AND )
TOURISM ASSOCIATION, et al., )
                                )
               Plaintiffs, )  No. J94-0033 CV (JWS)
                                )
  vs. )  <u>ORDER FROM CHAMBERS</u>
                                )
GARY A. MORRISON, Forest )  (Docket Nos. 63 and 108)
Supervisor, et al., )
                                )
               Defendants. )
_____)

## BACKGROUND

The United States Forest Service prepared a series of environmental impact statements and supplements which concluded that certain timber in the Tongass National Forest should be sold to Alaska Pulp Corporation ("APC") pursuant to its long-term timber purchase contract. The adequacy of those statements and supplements was never challenged, and the sales were set to proceed when APC's contract was cancelled. Following cancellation of the APC contract, the timber sales that had been scheduled for offer to APC were prepared for sale to Ketchikan Pulp Corporation ("KPC") under its long-term contract and to others on an independent sales basis. Under this plan some of

the timber was offered in fiscal year 1994 and some was prepared for subsequent sale. Of the 282 million board feet (mmbf) originally to have been offered to APC, 89.5 (mmbf) was offered to independent buyers and 40.9 mmbf was offered to KPC in fiscal year 1994. In November 1994, plaintiffs Alaska Wilderness Recreation and Tourism Association, et al., sued to enjoin the harvest of the timber which had been sold in 1994 and to enjoin further sales of what had been APC timber. Plaintiffs argued that federal defendants' decision not to prepare supplemental environmental impact statements before offering the timber to others than APC failed to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4231 et seq. and the Alaska National Interest Lands Conservation Act ("ANILCA") 16 U.S.C. § 3101 et seq. Defendants Gary Morrison, Forest Supervisor, et al., joined by intervening defendant Alaska Forest Association ("AFA"), opposed on the grounds that further evaluations were not required by law.

Given that adequate environmental impact statements had been prepared pursuant to NEPA, which considered subsistence use of resources as mandated by ANILCA, this court held that a change in the identity of the buyer did not trigger further requirements under NEPA or ANILCA. This court reasoned that the impact on the environment and on subsistence use was not significantly affected by the identity of the timber buyer in circumstances where the Forest Service was directed by statute to attempt to meet market demand for timber and where there was evidence of market demand

for the volume of timber to be sold. On appeal the Ninth Circuit held that, because the original buyer had a special long-term contract, the Forest Service might make a different decision with respect to which sales should be made to buyers who were not parties to that contract. Holding that defendants' failure to initiate a new evaluation process when APC's contract was cancelled violated NEPA and ANILCA, the appellate court enjoined harvest of the 282 mmbf of timber pending compliance with NEPA and ANILCA. Alaska Wilderness Recreation & Tourism Assoc. v. Morrison, 67 F.3d 723, 731 (9th Cir. 1995)

Recognizing that this court's evaluation of the merits of plaintiffs' claims had foreclosed a detailed examination into the hardships associated with injunctive relief, the Ninth Circuit specifically directed this court to consider the equities involved in the continuation of the injunction. "We therefore . . . remand to the district court for a balancing of the equities to determine whether and in what form the injunction should continue pending the Forest Service's compliance with NEPA and ANILCA." Id. at 67 F.3d 732.

Following remand, this court issued an order requesting advice from the parties to facilitate evaluation of the existing injunction. The parties responded with a joint report providing for limited discovery which was desired by plaintiffs and a briefing schedule intended to allow a decision by the court by the mid-March commencement of logging operations which was desired by defendants. In keeping with the agreed schedule, AFA

filed its memorandum arguing against a permanent injunction on December 22, 1995, at Docket 51.  Also in keeping with the schedule, federal defendants timely filed a memorandum setting out their views on the appropriate scope of the injunction at Docket 52.  At that point the parties opted to enter settlement discussions.

Defendants and plaintiffs jointly filed a motion at Docket 63 requesting approval of their proposed settlement which was attached as an exhibit.  At Docket 75, AFA opposed the motion and requested that an evidentiary hearing be held to address (i) the volume of timber the agreement would actually produce, (ii) whether the proposed agreement incorporates certain principles articulated by Judge von der Heydt, (iii) whether the proposed settlement was negotiated at arms length, and (iv) whether the proposed settlement agreement actually affords plaintiffs more relief than the injunction entered by the Ninth Circuit.  AFA also sought the opportunity to conduct discovery prior to the evidentiary hearing.

Both the motion at Docket 63 and the motion for an evidentiary hearing at Docket 75 were fully briefed.  After hearing oral argument on the motion for an evidentiary hearing, this court ordered all parties to resume negotiations.  Further negotiations were held on April 11, 12, 15, and 16, 1996.  They did not produce a settlement acceptable to AFA but did result in the filing of an amendment to the proposed settlement by plaintiffs and federal defendants at Docket 108.

EXHIBIT 13
Page 4 of 6

With respect to the motion at Docket 75, the court issued several rulings from the bench which are repeated and explicated here. First, there is no need for an evidentiary hearing on the nature of the negotiations, because they were substantially fair and because excluding AFA from some of the negotiating sessions was a decision well within the discretion of the federal defendants. Further, any defect in the initial negotiations was remedied by the court-ordered negotiations.

Second, the principles announced by Judge von der Heydt in <u>Tenakee Springs v. Courtright</u>, J86-024 Civil, July 31, 1987, do apply, but there will be no need to conduct an evidentiary hearing to examine precisely how the proposed settlement measures up against those necessarily broad criteria, so long as the court is convinced that the proposed settlement is generally consistent with the criteria. The criteria may be articulated as follows within the context of this litigation. When considering injunctive relief pending compliance with NEPA and ANILCA which will reduce the amount of timber available for harvest from the Tongass National Forest, the court should be guided by three fundamental propositions, none of which takes precedence over the others. Those propositions require that any injunction should be fashioned to (1) maintain enough timber supply to allow the continuation of a viable timber industry in Southeast Alaska, (2) assure protection of the environment and subsistence use of the resources in the forest, and (3) retain as many options as possible for consideration in the NEPA/ANILCA process.

EXHIBIT 13
Page 5 of 6

Third, AFA raised colorable claims that the proposed settlement did not accomplish its apparent purpose of releasing a significant volume--approximately 105 mmbf--of timber for FY 1996 and FY 1997. More specifically, in order to evaluate AFA's claims, the court ordered an evidentiary hearing limited in scope to the following two issues: (1) Are the timber sales identified for release from the injunction in the proposed settlement agreement economically viable? (2) Has the reconfiguration of some of the timber sales rendered uneconomic a significant portion of the timber sales which remain for consideration in the on-going SEIS process?

The evidentiary hearing was conducted on April 23 and 24, 1996. Argument on the fairness of the proposed settlement was heard on April 24, 1996, following conclusion of the evidentiary hearing. In separate sections which are set out below, the court states its findings of fact and conclusions of law based on the evidentiary hearing, and sets forth its analysis and conclusion on the fairness of the proposed settlement.

### EVIDENTIARY HEARING

The evidentiary hearing was limited to two issues: (1) Are the timber sales proposed in the settlement agreement economically viable? (2) Does the reconfiguration of some of these timber sales from their original designs unreasonably reduce alternatives available for consideration in the SEIS process? Those who testified at the hearing were Steve Brink,